## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS-EASTERN DIVISION

GLIMPSE LLC (DBA SKYLIGHT),

                Plaintiff,

        v.

THE PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED IN SCHEDULE "A",

                Defendants.

Case No. 26-cv- 08349

Judge Georgia N. Alexakis
Magistrate Judge Jeannice W. Appenteng

### SECOND DECLARATION OF JAMES E. JUDGE

I, James E. Judge, declare and state:

1.      I am an attorney at law, duly admitted to practice before the Courts of the State of Illinois and this Court. I am one of the attorneys for Plaintiff Glimpse LLC (DBA Skylight) ("Plaintiff"). Except as otherwise expressly stated to the contrary, I have personal knowledge of the following facts and, if called as a witness, I could and would competently testify as follows:

2.      Defendants in this action operate online marketplace storefronts under fictitious names, unverified business entities, and misleading or incomplete contact details. Given the nature of international e-commerce and the deliberate steps taken by Defendants to conceal their identities, Plaintiff does not have access to their actual names, addresses, or contact information at this stage.

3.      Without a Temporary Restraining Order ("TRO"), Plaintiff may attempt to retrieve physical addresses associated with Defendants' seller accounts from various online platforms. However, sellers operating offshore e-commerce stores offering infringing products typically provide false, misleading, or incomplete names and addresses to obscure their locations in a specific attempt to evade liability. These sellers primarily use electronic communication to interact with customers and third-party service providers, which Plaintiff can only obtain with a TRO.

1

Based on my experience in anti-counterfeiting investigations and associated legal actions, even when a purported physical address appears on an e-commerce store, it is rarely legitimate.

4.      The only verifiable identifying information about Defendants, such as seller registration records, payment account details, and IP addresses, is in the possession of third parties, including online marketplaces and payment processors. Plaintiff can only obtain this information through third-party compliance with subpoenas issued pursuant to a TRO.

5.      Even with the TRO in place, some Defendants may continue to obscure their identities, requiring Plaintiff to wait until they voluntarily appear and engage in discovery before their true identities can be determined. In many Schedule A cases, certain Defendants never appear at all.

6.      In *Milkmen Design LLC Partnerships & Unincorporated Associations Identified on Schedule A,* No. 23-cv-877 (N.D. Ill. July 11, 2024)*,* an investigation supporting the motion for alternative service revealed that a significant number of Defendants whose physical addresses were provided—either by the platform or their own storefronts—could not be verified as legitimate or accurate. Plaintiff's investigators were able to locate valid mailing addresses for only two of numerous named Defendants during their physical. **Exhibit 1** attached hereto is a true and correct copy of a related unpublished decision in *Milkmen Design LLC*.

7.      In *The Naughtys LLC v. Does 1-580*, No. 21-cv-00492 (N.D. Tex. Apr. 2, 2021) investigators hired to verify the addresses provided by third-party platforms for Hague Service found that at least 89% of the physical addresses were fraudulent. **Exhibit 2** attached hereto is a true and correct copy of the related unpublished decisions and status reports in *The Naughtys LLC*.

8.      Defendants maintain complete control over their online storefronts, enabling them to alter store data and content, redirect consumer traffic to other seller identification names, switch

2

payment accounts, and transfer assets, especially in the face of legal action taken against them in their target markets, including this District. In cases involving online counterfeiting and infringement, Defendants frequently delete product listings, transaction records, and entire seller accounts upon learning of litigation.

9. Many Defendants process transactions through online payment services such as PayPal, Alipay, and Amazon Pay. Based on my experience in similar cases, once counterfeiters and infringers become aware of legal proceedings, they often transfer funds from these accounts to overseas banks, rendering asset recovery essentially impossible, even when judgment is entered against them.

10. In *PD Games LLC v. Partnerships & Unincorporated Associations Identified on Schedule A*, No. 23-cv-01124 (N.D. Ill. August 15, 2023), Judge Seeger granted Plaintiff's *Ex Parte* Motion in part, denying the asset restraint. Following that decision, certain Defendants with account balances as high as $70,413.64 reduced their balances to $0 by the time a final default judgment was entered. A subsequent review of these stores revealed that many Defendants had removed all product listings and ceased operations.

11. **Exhibit 3** attached hereto is a true and correct copy of the Declaration submitted by Plaintiff's counsel in *Collegiate Licensing Company, LLC v. Partnerships & Unincorporated Associations Identified on Schedule A*, No. 24-cv-06219 (N.D. Ill. July 26, 2024), in which the counsel of record provided specific examples of similarly situated defendants who transferred funds outside the Court's jurisdiction upon receiving notice of a lawsuit when no asset restraint was in place. Ex.3 at ¶¶ 7-10.

12. Defendants in similar cases frequently receive early warnings of lawsuits through third-party monitoring services, such as "SellerDefense.cn", a Chinese website that tracks

3

Schedule A lawsuits filed in U.S. courts. SellerDefense actively alerts e-commerce infringers and provides guidance on how to evade enforcement by liquidating financial accounts, removing infringing listings, and switching payment processors. *See* **Exhibit 4**. The instant case has already been added to the 2026 Case List on SellerDefense, significantly increasing the likelihood that Defendants will be alerted to the lawsuit and take evasive actions before the Court can intervene. *See* **Exhibit 5**.

13. **Fed. R. Civ. P. 65(b)(1)(B) certification:** I hereby certify that Plaintiff's motion for TRO was filed and prosecuted *ex parte* for good reason. As discussed above, upon filing this motion, Plaintiff had sufficient reason to conclude that each Defendant's physical address reported in documents available when the Complaint and the motion for a TRO were filed was likely false. Verifiable contact information for Defendants will not be known until Amazon.com releases the required information to Plaintiff pursuant to subpoena. Once the alleged physical addresses are disclosed, Plaintiff will use the information produced by Amazon by engaging investigators in China to verify the addresses, at which time Plaintiff's counsel can determine whether the Hague Convention applies to any or all Defendants in this matter. *See Kangol LLC v. Hangzhou Chuanyue Silk Import & Export Co.*, No. 25-2205, — F.4th — (7th Cir. May 29, 2026*)*.

I declare under penalty of perjury that the foregoing is true and correct.

/s/ James E. Judge             Dated: July 23, 2026
James E. Judge, Counsel for Plaintiff